OPINION OF THE COURT
Herman Cahn, J.
Petitioner, Jay Alan Rosenblum, M.D., brings this CPLR article 78 proceeding to challenge the Workers’ Compensation Board’s (WCB) interpretation of Workers’ Compensation Law § 137 (3) (a). The petition seeks an order (1) vacating the WCB’s *589 denial of authorization to petitioner to conduct independent medical examinations, in workers’ compensation cases, (2) annulling respondent’s regulations promulgated under Workers’ Compensation Law § 137 (3) (a) insofar as they apply to petitioner, and (3) authorizing petitioner to conduct such independent medical examinations.
Respondent moves to dismiss the petition.
Petitioner is a medical doctor licensed to practice in the State of New York. He has been practicing medicine in New York City and specializing in neurology continuously for approximately 40 years.
Dr. Rosenblum has been certified by the WCB continuously since 1966, as a specialist in neurology qualified to render treatment to injured employees, under the Workers’ Compensation Law. Since 1966, a substantial part of his practice has consisted of treating workers’ compensation patients and conducting independent medical examinations on behalf of insurance carriers and employers related to workers’ compensation cases.
Chapter 473 of the Laws of 2000, entitled “Injured Workers’ Protection Act,” became effective on March 20, 2001. In part, it created a new Workers’ Compensation Law § 137, to require that “independent medical examinations” be conducted only by physicians who are “board certified” or “any other person authorized to examine or evaluate injury or illness by the board.”
To the extent that section 137 (3) (a) requires that independent medical examinations be conducted by “board certified” physicians, the Legislature never defined “board certified.” Thus, it fell to the WCB to promulgate regulations defining the term. WCB-11-01-00006-P promulgated by the WCB defines “board certified” as meaning a physician or surgeon who is certified by a specialty board that is recognized by the American Board of Medical Specialties (ABMS) or the American Osteopathic Association (AOA).
While petitioner is certified by numerous medical boards,* he is neither certified by the ABMS nor the AOA.
Petitioner argues that ABMS has not created a “Board Specialty” solely in neurology. The only section addressing *590 neurology as a specialty also encompasses psychiatry, or surgery. Thus, for a neurologist to receive board certification from ABMS, he must also have studied psychiatry, or be a surgeon. Since petitioner has never studied psychiatry and is not a surgeon, he asserts that he cannot be certified by ABMS.
AOA is not relevant to petitioner as it governs physicians who have earned a Doctor of Osteopathy (D.O.) degree. Petitioner has earned an M.D. degree.
Under the regulations as promulgated by respondent, a physician such as petitioner who is certified by several medical boards and who has been performing independent medical examinations under the Workers’ Compensation Law as a neurologist for many years would be ineligible to perform independent neurological examinations because he has not been certified by these two boards designated by the WCB.
Petitioner argues that to have construed the statute so narrowly was improper. Moreover, even if the statutory interpretation of the WCB were proper, it should have at least contained a grandfathering provision that would have kept physicians such as petitioner eligible.
The standard for reviewing an administrative agency’s interpretation of a statute is whether the interpretation is arbitrary and capricious or irrational. (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756 [1996].) An agency’s judgment is entitled to deference when its interpretation involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom. (Town of Lysander v Hafner, 96 NY2d 558 [2001].) The agency has wide authority to interpret, clarify, and implement legislative policy by prescribing regulations, provided that they are not inconsistent with specific statutory provisions. (Matter of State Farm Mut. Auto. Ins. Co. v Levin, 263 AD2d 233 [3d Dept], lv denied 95 NY2d 754 [2000].)
Respondent asserts that for more than a decade, the WCB has interpreted “board certified” as a physician or surgeon who is certified by a specialty board that is recognized by ABMS or AOA. Thus, for example, since 1990, the WCB has used this definition of “board certified” for purposes of administering its fee schedule. Respondent also asserts that it relied on the guidance received from the Medical Society of the State of New York (MSSNY).
Petitioner does not question the worthiness of MSSNY as a consultation source. Petitioner notes, however, that regarding *591 the subject regulation, MSSNY adopted resolution 2001-263 which permits physicians, such as petitioner, who already carry a “C” rating (which allowed such doctors to treat workers’ compensation patients) and have conducted independent medical examinations to continue to do so.
The WCB argues that while there are hundreds of organizations that claim to confer “board certification” status, they do not necessarily compare to the ABMS. Specifically, the ABMS specialty boards require completion of an M.D. or D.O. degree from a recognized school of medicine, an accredited residency, a valid state medical license, a written examination and in most cases an oral examination. Additionally, only the ABMS grew out of the Specialty Section of the American Medical Association.
The WCB also asserts that its position is consistent with other states that consider board certification. In order to become a licensed physician in Texas, an applicant must be board certified by a specialty board approved by the ABMS and/or AOA. (Tex Occ Code § 155.003 [c] [2].) In Montana, a physician may not be granted a telemedicine medicine certificate unless the physician has established that he is board certified or meets the current requirements to take the examination to become board certified in a medical specialty pursuant to standards of the ABMS or AOA. (Mont Code Ann § 37-3-345 [2].) Michigan defines “board certified” in its statutes as “certified to practice in a particular medical specialty by a national board recognized by the ABMS or the AOA.” (Mich Comp Laws § 333.2701 [a].) Hawaii will grant a limited license to an out-of-state physician who wishes to train a Hawaiian physician if the out-of-state physician is, among other things, board certified by the ABMS. (Haw Rev Stat § 453-3.5 [a] [1].) In California, physicians and surgeons who possess certificates issued by the State’s Osteopathy Medical Board may not hold themselves as board certified “unless the board certification has been granted by the appropriate certifying board, as authorized by the [AOA] or the [ABMS].” (Cal Bus & Prof Code § 2453.5.) Florida forbids licensed physicians from holding themselves out as “board certified” unless the physician “received formal recognition as a specialist from a specialty board of the [ABMS] * * *” (Fla Stat § 458.3312).
The WCB’s definition of “board certified” as requiring certification by a specialty board recognized by the ABMS or AOA is not arbitrary and capricious or irrational.
The statute grants the Board the authority to permit “any other person” (other than a board certified physician) to *592 perform the independent medical examinations (Workers’ Compensation Law § 137 [a]). Apparently, the Board has decided that it will not exercise this authority, but will limit the right to perform the independent medical examinations to physicians with board certification. The Board’s decision in this regard is also entitled to great deference, and this court will not second guess it. However, the court suggests that if petitioner again applies to the Board under this section, the Board may want to reconsider the issue in this light.
Accordingly, even if the court found that Dr. Rosenblum’s interpretation of the statute were also reasonable and consistent with the statute, it would not warrant vacating the subject regulation. Where there are two reasonable and consistent ways of construing the statute, it is not for the court to substitute its judgment for that of the regulatory agency charged with its enforcement. On the contrary, great weight and judicial deference is to be given to the agency interpretation as long as it is neither irrational, unreasonable nor inconsistent with the statute. (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 62 NY2d 539 [1984].)
Turning to the issue of grandfathering, petitioner cites Matter of Riddett v Allen (45 Misc 2d 227 [Sup Ct, Albany County], affd 23 AD2d 458 [3d Dept 1965]) for the proposition that grandfathering concessions are generally recognized in licensing statutes. But as the court in Riddett clearly pointed out, it applied a grandfather concession because the statute clearly suggested it. Here, the statute does not even hint of any grandfathering scheme, although, as stated above, the statutory authority granted the Board seems broad enough to permit it. In any event, the decision of whether or not to grandfather must be left to the WCB.
Accordingly, it is ordered and adjudged that the petition is denied and respondent’s motion to dismiss the proceeding is granted, with costs and disbursements to respondent.

 Dr. Rosenblum alleges that he is certified by the American Society of Neurorehabilitation, the American Board of Pain Management, the American Board of Forensic Medicine, the American Board of Legal and Industrial Medicine and Surgery, the American Board of Neurological and Orthopaedic Medicine and Surgery, and is a senior Diplómate of the American Board of Disability Analysis and a senior member of the American Academy of Neurology.